# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| FRANK MARZULLO, | ) |
| | ) |
| Plaintiff, | ) |
| vs. | ) NO. |
| | ) |
| COMMUNITY COLLEGE DISTRICT 527, | ) Trial by Jury Demanded |
| MORTON COLLEGE, | ) |
| PRESIDENT STANLEY FIELDS, | ) |
| TRUSTEE ANTHONY MARTINUCCI and | ) |
| JOSEPH FLORIO, | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

NOW COMES FRANK MARZULLO (Plaintiff) by his attorneys HALE & MONICO, LLC and EDMUND P. WANDERLING complain against Defendants Community College District 527, Morton College, Stanley Fields, Anthony Martinucci and Joseph Florio for (1) engaging in racketeering acts in violation of the Racketeering Influenced and Corrupt Organziation Act 18 U.S.C. 1962(c) et. seq. (2) terminating his employment in retaliation for his whistleblowing and refusing to ignore flagrant illegal activity that violated State and Federal law, in violation of the Illinois Whistleblower Act, 740 ILCS 174/1 et. seq. (IWA), (3) terminating his contract for alleged cause and committing common law retaliatory discharge for the Plaintiff's disclosing alleged illegal activity, his attempt to investigate and disclose wrong doing by Stanley Fields, Anthony Martinucci and Joseph Florio and for his refusal to look the other way as to the defendants wrongdoings and in support thereof states as follows:

## NATURE OF ACTION

The Plaintiff brings a three (3) count Complaint alleging violations of 18 U.S.C. Section 1962(c) a civil Racketeering Conspiracy (Count 1); 740 ILCS 174/20, the Illinois Whistleblower Act (Count 2) and Retaliatory Discharge (Count 3). Specifically as described herein, Plaintiff was employed by Defendant Community College District 527, Morton College as Vice President of Administrative Services/Inspector General.

During the course of his employment he learned of improper actions both criminal in nature and in violation of college policies being done by Defendant Stanley Fields (the college president), Defendant Anthony Martinucci (a college Board Trustee) and Defendant Joseph Florio (Director of Campus Operations and Facilities) individually and in conjunction with each other.

As a result of raising and disclosing various issues regarding improprieties by Defendants Fields, Martinucci and Florio being done both individually and pursuant to their agreement, he was wrongfully terminated by the college and his termination was done in retaliation for his challenging and questioning their actions and for blowing the whistle on their wrong doings.

## JURISDICTION AND VENUE

This Court has jurisdiction pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO") 18 U.S.C. §1961 et seq., (specifically 18 U.S.C. §1964(c)), and 28 U.S.C. §1331.

This Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367 over Plaintiffs' Illinois law claims for violation of the IWA and common law retaliatory discharge.

Venue is proper in this judicial district under 28 U.S.C. §1391(b) and (c) because the Plaintiffs and all of the Defendants either reside in this district or have their principal place of

business in this district, and all events giving rise to Plaintiff's claim occurred within the Northern District of Illinois.

**PARTIES**

Plaintiff **Frank Marzullo** is a resident of Kane County, Illinois and resides within the Northern District of Illinois and a former employee of Morton College.

Defendant **Community College District 527, Morton College** is a junior college located in Cicero, Illinois and the former employer of the Plaintiff.

Defendant **Stanley Fields** is the President of Morton College, is a resident of Cook County and the Northern District of Illinois and is one of the co-conspirators in this cause.

Defendant **Anthony Martinucci** is an elected Board Trustee for Morton College, resides in Cook County and the Northern District of Illinois and is one of the co-conspirators in this cause.

Defendant **Joseph Florio** is the Director of Campus Facilities and Operations at Morton College, resides in Cook County and the Northern District of Illinois and is one of the co-conspirators in this cause.

All Defendants conspired in their Scheme to commit a multitude of crimes, including racketeering under Stanley Fields and Anthony Martinucci's supervision.

On information and belief Stanley Fields, Anthony Martinucci and Joseph Florio violated 18 U.S.C. §§1962(c) and (d) by actively participating in the Scheme. Stanley Fields and Anthony Martinucci oversaw and enabled the Scheme which involved a multitude of crimes, including:

A. Mail fraud, violating federal statutes including but not limited to the 18 U.S.C.

3

&sect;1341 and 18 U.S.C. §1349;

B. Wire fraud, violating federal statutes including but not limited to 18 U.S.C. §1343;

C. Credit card fraud, mail fraud and wire fraud violating Illinois statutes, including but not limited to 720 Ill. Comp. Stat. 5/17-24, 26, 32 and 37;

D. Theft under Illinois statute 720 ILCS 5/16-1, 720 ILCS 5/16-3;

## FACTS APPLICABLE TO ALL COUNTS

1. In 2007, Plaintiff, Frank Marzullo, began his employment at Morton College as a part time campus safety director.

2. Over the years, Plaintiff advanced to the position of Vice President of Administrative Services/Inspector General and his contract with Morton College was most recently renewed on August 26, 2020.

3. At all times relevant to this Complaint, Defendant Community College District 527, Morton College, was a public community college located in the Town of Cicero, State of Illinois and County of Cook.

4. At all times relevant to this Complaint, Defendant Stanley Fields was the President of Morton College.

5. At all times relevant to this Complaint, Defendant Anthony Martinucci was an elected Trustee on the Board of Trustees of Morton College.

6. At all times relevant, Defendant Joseph Florio was the Director of Campus Operations and Facilities and per his job description, he reported to the Vice President of Administrative Service, which was the Plaintiff. (See Ex. 1)

4

7. At all times relevant, the Plaintiff's job functions and job description included the following: Performs duties related to internal investigations at the College, such as, conduct background checks, assess and report investigative findings, prepare and submit all federal, state and local reports as required: e.g. campus crime statistics per the Clery Act, investigate critical campus safety incidents, all in compliance with the College's conflict of interest policy, review college policies and procedures regarding key campus safety issues, and lead and/or develop training programs, as may be needed, for all Campus Safety personnel. (See Ex. 2)

8. At all times relevant to this Complaint, as part of Plaintiff's job duties, he conducted internal investigations and conducted background checks of employees.

9. The first issue Plaintiff raised to Defendant Stanley Fields was that after completing an investigation in early 2019 of employee, M.M. which disclosed that this employee, M.M. had improperly used a college credit card for personal expenses and M.M. subsequently resigned from the college, the Plaintiff also learned that other employees may have improperly used the college credit cards for personal expenses such as groceries and the Plaintiff wanted to investigate further and contact the local police. These employees worked closely with Defendant Stanley Fields as they worked in his office. Once the Plaintiff advised Defendant Stanley Fields that he wanted to further investigate these other employees, he was directed to cease and terminate any further investigation by Defendant Stanley Fields.

10. The second issue Plaintiff raised to both Defendant Stanley Fields and Defendant Anthony Martinucci was what was the basis for which Defendant, Stanley Fields recommended to the College Board of Trustees to give Defendant Joseph Florio, the Director of Campus Operations and Facilities over a $20,000.00 annual raise during a global pandemic in September 2020, when just a month prior Defendant Joseph Florio had received a 3.5% raise

5

which was what most college employees received. The Plaintiff went to Defendants Fields and Martinucci and advised them that per the college rules, that he, the Plaintiff, is the one that Defendant Florio reports to and that he, the Plaintiff, is the one who evaluates Defendant Florio. (See Ex.1). Further, Plaintiff did not recommend that Florio get such a raise. The Plaintiff later learned that without his knowledge nor recommendation, that Defendant Stanley Fields also had a SUV purchased by the college for Defendant Florio's sole and exclusive use without the Board approval. In addition, the Plaintiff learned that the college was paying for the gas and insurance for the vehicle Defendant Florio was given as well as all maintenance. The Plaintiff checked the board minutes and learned that the college board never approved Defendant Florio getting this vehicle nor was it approved that his gas be paid for by the College. The Plaintiff learned that Defendant Florio allegedly had done, was in the process of doing or was going to do remodeling and/or repair work at Defendant Fields' former property in Wauconda, Illinois as well as his current property in Forest Park, Illinois and Defendant Martinucci's home in Berwyn, Illinois. In fact, Defendant Florio was observed at a Home Depot with Defendant Martinucci's common law wife M.H. while on college time looking at kitchen cabinets for Defendant Martinucci's Berwyn home and thereafter Defendant Florio observed at Martinucci's house. The Plaintiff raised the issue of Defendant Florio's large raise during the global pandemic when the college was laying off $15.00 an hour maintenance workers and why Defendant Florio was given a vehicle without board approval to Defendant Fields and Defendant Martinucci in late September to early October 2020 and was advised by Defendant Fields that he (President Fields) was the president of the college and he can make any decision he wanted, and it was not anything to which the Plaintiff should be concerned with.

6

11. The third issue the Plaintiff raised to Defendant Stanley Fields and Defendant Martinucci was related to the college hiring a new woman's basketball coach J.N. The Plaintiff per his job duties did a background check done of J.N. which disclosed J.N. was a convicted felon and per the college guidelines, policies and rules was not eligible for that position. Thereafter, Defendant Martinucci with Defendant Fields put on June 24, 2020 agenda for at the college board hearing a request to hire J.N. not as the woman's basketball coach but as a consultant to the college athletic department which the board ultimately approved. (See Ex. 3A and 3B) By hiring J.N. as a consultant, the felony conviction was not an issue. However, despite being retained as a consultant, the next day, J.N. was introduced as the basketballs college new woman's basketball coach (although the Board never approved such) at a rate of $5,000.00 per month when the prior woman's coach was paid about $9,000.00 for the entire season.(See Ex. 4) (It should be noted that the college retained a consultant to their athletic department during Covid when the college was not even open). It was later learned that prior to the June 24, 2020 board meeting retaining J.N. as a consultant to the athletic department, that Defendant Fields had already been paying J.N. since February 2020 and had already paid J.N. about $16,000.00 for unknown services. Defendant Martinucci recruited J.N. to the college to be the woman's basketball coach. The reason Defendant Martinucci wanted J.N. as the woman's basketball coach was so he (Martinucci) could hand pick the coach for his daughter J.M. who was on the college woman's team with the understanding J.N. would get her a basketball scholarship to a four (4) year college.

12. In mid November, 2020, Defendant Fields and Defendant Martinucci advised the Plaintiff that they were now going to make J.N. the new athletic director for the college. The Plaintiff again advised Defendant Fields and Defendant Martinucci that J.N. was not eligible not

7

only because of his felony conviction, but also because he lacked the required college degrees for the position after which an argument ensued between the Plaintiff and President Fields wherein Defendant Fields told the Plaintiff that "you work for me" to which the Plaintiff responded, "I report to you, I work for the Board of Trustees" and Defendant Martinucci stated "Frank (the Plaintiff) just go along with it."

13. That on or about November 25, 2020, approximately a week after the Plaintiff raised the issue of hiring a convicted felon, J.N., as the athletic director, Plaintiff was placed on paid leave. (See Ex. 5).

14. That on December 2, 2020, the Plaintiff's counsel emailed the college attorney and advised the college's attorney that the Plaintiff would agree to cooperate in any investigation and also advised the college attorney that Defendant Fields had a conflict and any investigation should relate to Defendant Fields and Defendant Martinucci as well. (See Ex. 6)

15. That at no time neither the Plaintiff nor his attorney were ever asked to be interviewed as part of any investigation despite agreeing to cooperate in any investigation.

16. That on December 21, 2020, the Plaintiff was served with a notice that he was being placed on unpaid leave. (See Ex. 7)

17. That from late December to early February 2021, the Plaintiff through his counsel conducted their own investigation into wrongdoing by President Fields, Trustee Martinucci and Florio through a review of the college board minutes and raised six (6) separate allegations of wrongdoing by the Defendants to the college board of trustees.

18. That on February 17, 2021, counsel for the Plaintiff served upon Dr. Keith McLaughlin, the college Provost and Wendy Vega-Huezo from the college's human resources a notice of retailiation by President Fields and a violation of the Illinois Whistleblower Act. The

letter was also served on the Board of Trustees president Fran Reitz and the college attorney. (See Ex. 8)

    19.    That Plaintiff's investigation disclosed the following six (6) allegations of wrongdoing in violation of both criminal laws and college rules and policies:

(a) Defendant Fields had the college pay his travel expenses to go see his son at a college on the east coast by falsely representing those expenses were for him to go to various conferences for the college.

(b) Defendant Fields has allowed and covered up the theft of college funds through the use of college credit cards by his staff for personal expenditures.

(c) Defendant Martinucci, with President Fields consent, billed the college $2,688.24 for his daughter's high school basketball party in April 2019 and disguised the charge alleging it was a basketball recruiting event. (See Ex. 9). In addition to charging the college, on information and belief, Defendant Martinucci charged the other parents of the players on the team and pocketed the money.

(d) The facts and circumstances regarding the Defendant Florio pay raise and the fact he was given a college vehicle for his personal use and the fact Defendant Florio did work at both Defendant Fields and Defendant Martinucci's homes.

(e) That Defendant Fields told a car repair shop to bill repairs to his son's vehicle and girlfriend's vehicle to the college.

(f) The hiring of J.N. as basketball coach and Defendant Fields and Martinucci's desire to make J.N. athletic director with his felony conviction and lack of the required job qualifications (which the Plaintiff previously raised to Defendants

Fields and Martinucci) and how Defendants Fields and Martinucci revised the job description/qualifications for athletic director so that J.N. would qualify, (See Ex. 10) and the fact they did not disclose to the Board of Trustee that J.N. is a convicted felon and how they eliminated the requirement that the athletic director have a Master's degree and now needed no degree so J.N. would be qualified for the position while at the same time enhancing the job qualifications for the assistant athletic director to require not only a Bachelor's degree but now a Masters Degree thus making the assistant position more difficult to qualify for then the athletic director position (See Ex. 11).[1]

20. That despite providing the foregoing allegations to the College attorney and Board of Trustees, the College did nothing regarding serious allegations both criminal in nature and in violation of college policies. The college did nothing to investigate these alleged wrongdoings but on February 23, 2021 Defendant Fields had a nine (9) count allegation filed against the Plaintiff alleging the Plaintiff engaged in improper conduct.

21. On March 12, 2021, after the Plaintiff provided his written response to the allegations against him, counsel for the college presented their allegations against the Plaintiff after which counsel for the Plaintiff was given the opportunity to respond. Thereafter the college board of trustees voted 6-0 to terminate the Plaintiff with one trustee not voting. The Board did not identify which of the nine (9) allegations constituted cause as required in the Plaintiff's contract with the college, but merely voted to terminate the Plaintiff. .

22. Upon information and belief, Defendant Stanley Fields was aware of and allowed the improper use of College credit cards by certain employees for their personal use and benefit.

---

[1] J.N. was ultimately named athletic director despite being a convicted felon.

10

23. Upon information and believe college charge cards and charge accounts were used for the personal benefits of Defendant Stanley Fields, Defendant Anthony Martinucci and Joseph Florio for personal expenses such as home remodeling, home furnishings, meals, gas, travel and other items.

24. That Defendant Stanley Fields and Defendant Anthony Martinucci were fully aware that J.N. was a convicted felon and that he lacked the requisite college degrees to be athletic director and as a result, Defendant Fields and Defendant Martinucci had the job description for athletic director and amended the job requirements for that position by removing the college degree requirement and the requirement to have a valid driver's license (as J.N. did not have a valid driver's license as well). (See Ex.10); however, the assistant athletic director's job qualifications were amended to require the assistant to have both a bachelor's and Master's degree. (See Ex. 11).

25. Upon information and belief, Defendants Stanley Fields, Anthony Martinucci, and Joseph Florio conspired to make false allegations against Plaintiff leading to his termination.

26. Upon information and belief, Defendants Stanley Fields, Anthony Martinucci, and Joseph Florio conspired to cover up their own wrong doing by raising false allegations against the Plaintiff in order to get him terminated.

27. That on July 29, 2021, the college filed a civil lawsuit against Plaintiff alleging the Plaintiff committed fraud and breached his fiduciary duty to the college.

## COUNT I - CIVL RACKETEERING

28. Plaintiff reincorporates and realleges by reference paragraphs 1-26 as though fully set forth herein.

29. As Detailed above in paragraphs 1-26 Defendants, Stan Fields, Anthony Martinucci, and Joseph Florio and others (the "RICO Defendants") conducted or participated in the conduct of an enterprise, Morton College, through a pattern of racketeering activity in violation of 18 U.S.C. Section 1962(c).

30. Alternatively, the RICO Defendants, through an agreement to commit two or more predicate acts, conspired to conduct or participate in the conduct of an enterprise through a pattern of racketeering activity in violation of 18 U.S.C. Section 1962 (d). The actions of the RICO Defendants as against Plaintiff, and as described herein, were in furtherance of the RICO Defendants' conspiracy and in violation of 18 U.S.C. Section 1962 (d).

31. Morton College was and is the passive instrument of the Defendant's racketeering activity and constitutes and "enterprise" as that term is defined in 18 U.S.C. Section 1961 (4), separate and distinct from the individual Defendants named herein.

32. Starting approximately over 12 months ago, and continuing, upon information and belief, to present day, the Defendants, as well as other persons known and unknown, being persons associated with Morton College, unlawfully and knowingly conducted or participated directly or indirectly, in the affairs of that enterprise through a pattern of racketeering activity, that is, through the commission of two or more racketeering acts set forth herein. This illegal racketeering activity includes, but is not limited to engaging in a coordinated pattern of illegally fraudulent behavior, to spend and use College funding, of which is government grants, for the purposes of personal use and home repairs, and to the detriment of the Plaintiff.

33. That the Defendant's scheme of fraud and deceit was disclosed by the Plaintiff and the Defendant's filed allegations to have the Plaintiff terminated for cause from his position

at Morton College and in doing so damaged his reputation and damaged him financially with false and fraudulently made claims.

34. That Defendants Fields, Martinucci and Florio and others through their scheme and in retaliation against the Plaintiff Marzullo for Marzullo disclosing their fraudulent activities put together numerous fraudulent allegations in order to have Marzullo terminated from his contract with the college which was not to terminate until June 30, 2024 and paid him an annual salary of over $188,000.00 by and pattern and schemes of wire fraud in that they transmitted by wire fraudulent allegations on February 23, 2021 as the Plaintiff alleging he gave improper overtime to employees, that he did not properly supervise the college police department, that he harassed or bullied co-workers, he had improper actions with vendors, that he was grossly negligent in the oversight on college infrastructure projects and that he improperly hired a law firm to do grant work knowing that such allegations were not true and the basis was to terminate the Plaintiff's contract.

35. That Defendants caused to be filed electronically by wire on July 29, 2021 a lawsuit which fraudulently alleged Plaintiff Marzullo committed fraud and breach of his fiduciary duties to the college making completely different allegations regarding the "Rock It" site clean up job than they had previously made against the Plaintiff and allegations which are without merit.

36. As alleged with particularity above, the Defendants are jointly and severally liable to the Plaintiff for treble damages, together with all costs for this action, plus reasonable attorneys' fees as provided by 18 U.S.C. Section 1964.

WHEREFORE, Plaintiff respectfully requests that this Court grant him the following relief:

a) Treble the amount of all wages and benefits Plaintiff would have received but for Defendants' unlawful conduct, including but not limited to back pay, front pay, and pre-judgment interest.

b) Compensatory damages in an amount to be determined at trial to compensate Plaintiff for the damage to his reputation, loss of career opportunities, humiliation, anguish and emotional distress caused by the Defendants' unlawful conduct;

c) Treble and/or punitive damages as allowed by law;

d) An award of reasonable attorney's fees, costs and litigation expenses pursuant to 18 U.S.C. Section 1964(d) and all other applicable statutes; and

e) Such other relief as the Court may deem just or equitable.

## COUNT II – VIOLATION OF THE IWA 740 ILL.COMP.STAT 174/20

37. Plaintiff reincorporates and realleges by reference herein against the RICO Defendants paragraphs 1-35 above as though fully set forth herein.

38. Plaintiff brings Count II against, Morton College, Stan Fields, individually, Anthony Martinucci, individually, and Joseph Florio, individually, for violation of the IWA 740 Ill.Comp. Stat. 174/1, *et. seq.*

39. Under the IWA an employer may not retaliate against an employee for refusing to participate in an activity that would result in a violation of State or federal law, rule, or regulation. 740 Ill.Comp. Stat. 174/20.

40. An employee may bring a civil action against an employer who violates the IWA. 740 Ill.Comp. Stat. 174/30.

41. Morton College, Stan Fields and Anthony Martinucci acted on behalf of the Plaintiff's employers, and the Plaintiff was an employee as those terms are defined under the IWA 740 Ill.Comp. Stat. 174/5.

42. The Plaintiff engaged in legally protected activity, to wit, refusing to commit and/or participate in several criminal, fraudulent and otherwise illegal activities, including but not limited to theft, credit card fraud and violations of college policies.

43. Defendants' created false allegations against the Plaintiff and terminated Plaintiff's employment in retaliation for his refusal to participate in the scheme, ignore the scheme and for the other frauds and the violations of college policy as enumerated herein, in violation of the IWA.

44. As the direct result of Defendants' actions in violating the IWA, Plaintiff has suffered the loss of income, benefits, and career opportunities as well as humiliation and emotional distress.

> WHEREFORE, the Plaintiff Frank Marzullo respectfully prays that this Honorable Court enter an order granting judgment in his favor against Defendants' Morton College, Stanley Fields, Anthony Martinucci and Joseph Florio and grant him the following relief:
> 
> a) Lost wages in the form of back pay, with all statutory interest and penalties pursuant to 740 ILCS 174/30;
> 
> b) Lost wages in the form of front pay;
> 
> c) Damages for emotional distress and humiliation;
> 
> d) Reasonable attorney fees and costs; and
> 
> e) The costs of this action
> 
> f)

## COUNT III-RETALIATORY DISCHARGE

45. Plaintiff reincorporates and realleges by references paragraphs 1-26 as though fully set forth herein.

46. Plaintiff brings Count III against, Morton College, Stan Fields, individually, Anthony Martinucci, individually, and Joseph Florio, individually, for common law retaliatory discharge.

47. Illinois law permits an employee to recover damages for retaliatory discharge from their former employer, if the former employer discharges the employee in retaliation for refusing to participate in activity or the employee complains to a government entity or internally, and the discharge contravenes a public policy.

48. The Plaintiff engaged in legally protected activity when he complained about the misuse of College credit cards and the hiring of a convicted felon as woman's basketball coach and as the potential athletic director.

49. The Plaintiff engaged in legally protected activity when he refused to participate in the Scheme, which included several forms of illegal activity such as theft of college funds and violations of college policies.

50. The Plaintiff reported these illegal activities to the College.

51. Defendants' brought charges against the Plaintiff in retaliation for his protected acts, which contravenes public policy.

52. As the direct result of the illegal termination of his employment, the Plaintiff suffered loss of income, benefits, and career opportunities, as well as humiliation and emotional distress.

WHEREFORE, Plaintiff, Frank Marzullo respectfully requests that this Court enter an

order granting judgment in their favor against Defendants' Morton College, Stan Fields, Anthony Martinucci, and Joseph Florio, and grant him the following relief:

a) Lost wages in the form of backpay, with statutory interest penalties pursuant to 740 ILCS 174/15 and 174/30;

b) Lost wages in the form of front pay;

c) Damages for emotional distress and humiliation;

d) Reasonable attorney's fees; and

e) The costs of this action.

Respectfully submitted

<i>/s/ John W. Chwarzynski Jr.</i>

One of Plaintiff's Attorneys

John W. Chwarzynski Jr.
ARDC# 6327836
Attorney for Frank Marzullo
HALE & MONICO, LLC
53 West Jackson, Suite 337
Chicago, IL 60604
(773) 307-3157
jwc@halemonico.com


Edmund P. Wanderling
Attorney for Frank Marzullo
2505 S. Des Plaines Avenue
North Riverside, IL 60546
(708) 443-5400
Law6447@aol.com